IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| EXAFER LTD, § | | |
| § | | |
| Plaintiff, § | | |
| § | | |
| v. § | 1:20-CV-131-RP | |
| § | | |
| MICROSOFT CORPORATION, § | | |
| § | | |
| Defendant. § | | |

### ORDER

Before the Court is Defendant Microsoft Corporation's ("Microsoft") Motion for Summary Judgment Based on Absence of Remedy. (Dkt. 195). Plaintiff Exafer Ltd ("Exafer") filed a response in opposition, (Dkt. 207), and Microsoft filed a reply, (Dkt. 220). Having considered the parties' submissions, the record, and the applicable law, the Court will grant Microsoft's motion for summary judgment.

### I. BACKGROUND

Exafer filed its original complaint in this action on December 4, 2019. (Dkt. 1). It then filed an amended complaint on September 8, 2020, which is the live complaint in this action. (Dkt. 38). In its amended complaint, Exafer brings claims against Microsoft for direct and indirect infringement of United States Patents Nos. 8,325,733 and 8,971,335 (the "Patents-in-Suit"). (*Id*.). Exafer requests damages under 35 U.S.C. § 284, or otherwise permitted by law. (*Id.* at 52).

Exafer alleges that the Patents-in-Suit relate to Software Defined Networking, "which is an approach to computer network management that enables dynamic programmatically efficient network configuration to improve network performance and monitoring." (*Id.* ¶ 64). The United States Patent and Trademark Office ("USPTO") duly and legally issued United States Patent No. 8,325,733 ("the '733 patent"), entitled "Method and System For Layer 2 Manipulator and

Forwarder," on December 4, 2012. (*Id.* ¶ 66). Exafer states that the '733 patent is presumed valid under 35 U.S.C. § 282; Exafer owns all rights, title, and interest in the '733 patent; and Exafer has not granted a license to Microsoft relating to the '733 patent. (*Id.* ¶¶ 67–69). The abstract of the '733 patent describes a "method and system for forwarding frames of a flow via a layer 2 forwarder and manipulator (L2FM) for improving network utilization and improving users experience by reducing the latency associated with the flow. When a new flow is identified, forward control information for frames of the new flow is obtained. The forward control information can include re-writing of at least one field in an original header of the frames of the new flow. At least one field in an original header of the frames of the new flow is manipulated according to the obtained forward control information, and the manipulated frames of the new flow are forwarded accordingly." (*Id.* ¶ 70 (citing '733 Patent, Dkt. 38-1)). Exafer alleges that Microsoft's Azure Platform—specifically its Azure Smart Network Interface Cards ("Azure SmartNICs") and its Virtual Filtering Platform ("VFP") Packet Processor software component (the "Accused Features")—infringes at least Claim 26 of the '733 patent. (*Id.* ¶¶ 140, 142). Claim 26 of the '733 patent provides as follows:

> 26. A method for forwarding frames of a flow via a layer 2 forwarder and manipulator (L2FM), the method comprising:
>
> > a. identifying, at the L2FM, one or more first frames of a new flow;
> >
> > b. obtaining forward control information for frames of the new flow, wherein the forward control information includes re-writing of at least one field in an original header of the frames of the new flow, wherein obtaining forward control information is done out of band;
> >
> > c. changing the at least one field in an original header of the frames of the new flow according to the obtained forward control information; and
> >
> > d. forwarding the frames of the new flow according to the forward control information;

> wherein at least portion of the control information is obtained from a remote-admission-and-information controller (RAIC).

('733 Patent, Dkt. 38-1).

Exafer claims that the VFP Packet Processor software component and the SmartNIC "identify one or more first frames of a new flow when a new network traffic flow arrives at or is generated by the Azure Platform." (Am. Compl., Dkt. 38, at 35). Components of the Azure Platform including "servers and Azure SmartNICs" then "obtain forward control information for frames of new flows from components of the Azure Platform" before changing "at least one field in an original header of the frames of the new flow according to the obtained forward control information." (*Id.* ¶¶ 143, 148). The Azure Platform then "forward[s] the frames of the new flow according to forward control information." (*Id.* ¶ 149).

The USPTO duly and legally issued United States Patent No. 8,971,335 ("the '335 patent"), entitled "System and Method for Creating a Transitive Optimized Flow Path," on March 3, 2015. ('335 Patent, Dkt. 38-2). In regard to the '335 patent, Exafer alleges that Microsoft's Azure Platform infringes at least Claim 26. (*Id.* ¶ 160). Claim 26 of the '335 patent provides as follows:

> 26. A method to optimize information delivery between a first node on a first network and a second node on the same or different network, the delivery being made through a net worked system in which one or more paths between the first node and the second node are known and, through a Transmitting Device Set with Promiscuous and Re-writing Capabilities (TDSPRC) that receives and retransmits all frames of the first network and the same or different network, and the method comprising:
>
>> collecting topology information related to three or more different Open System Interconnection (OSI) model layers from a plurality of network devices working in networks that belong to different OSI layers;
>>
>> identifying alternate paths, based at least in part on the collected topology information related to three or more different OSI layers, between the first node and the second node;

3

> creating a collective virtual network (CVN) including the known paths and the alternate paths, for a particular flow, identify an optimal path in the CVN instead of a known path between the first node and the second node; and
>
> modifying the data frames of the particular flow to be compatible with a network technology employed by the identified optimal path, wherein the modification is implemented by the TDSPRC and the TDSPRC is not a member in at least one of the networks.

('335 Patent, Dkt. 38-2).

Exafer claims that Microsoft's Azure Platform "practices a method to optimize information delivery between a first node on a first network and a second node on the same or different network." (Am. Compl., Dkt. 38, ¶ 162). Exafer further claims that the Azure Platform includes a TDSPRC, (*id.* ¶ 165), and that the Azure Platform "receives and retransmits all frames of a network and the same or different network through a TDSPRC," (*id.* ¶ 166). One or more the Azure Platform's components "identify alternate paths" based on "the collected topology information related to three or more different OSI layers, between the first node and the second node"; "create a collective virtual network (CVN) including the known paths and the alternate paths, for a particular flow, and identify an optimal path in the CVN"; and "modify data frames of a flow to be compatible with a network technology employed by the identified optimal path." (*Id.* ¶¶ 168–69, 171).

Exafer alleges that Microsoft has been on notice of the Patents-in-Suit at least as early as the filing and service of the original complaint in this action. (*Id.* ¶¶ 151, 173). Exafer asserts that Microsoft "knowingly encourages, and continues to encourage, customers to directly infringe" the Patents-in-Suit, "including by Microsoft's actions that include, without limitation, instructing and encouraging customers to use the Azure Platform through user guides/manuals, advertisements, promotional materials, and instructions." (*Id.* ¶¶ 153, 174). Further, "Microsoft's domestic Azure Platform customers, including but not limited to the 173 Microsoft's Azure Platform customers who

4

Case 1:20-cv-00131-RP    Document 247    Filed 08/15/24    Page 5 of 18

are listed on their website, directly infringe [the Patents-in-Suit] through their use of the Azure Platform." (*Id.* ¶¶ 152, 177). Finally, Exafer asserts that "Microsoft is in violation of 35 U.S.C. § 271(b) and has been indirectly infringing" the Patents-in-Suit by "knowingly and specifically intending to induce infringement by others . . . and possessing specific intent to encourage infringement by Microsoft's customers." (*Id.* ¶¶ 157, 178).

United States District Court Judge Alan D. Albright held a *Markman* Hearing in this case on November 6, 2020. (Minute Entry, Dkt. 53). Subsequently, Judge Albright issued a claim construction order, (Dkt. 63), and a supplemental claim construction order, (Dkt. 84). This case was then transferred to United States District Court Judge Lee Yeakel on November 12, 2021, (Dkt. 97), and then to the undersigned on December 13, 2021, (Dkt. 99). On February 23, 2023, the Court entered a scheduling order, setting the jury trial for December 4, 2023. (Dkt. 116). On April 20, 2023, the Court granted Microsoft's opposed motion for a continuance and reset the trial for February 5, 2024. (Text Order, Apr. 20, 2023). The trial date was moved once again after Exafer filed two "untimely and unauthorized" supplemental expert reports, and United States Magistrate Judge Mark Lane granted Microsoft leave to also serve supplemental expert reports to cure the prejudice. (Order, Dkt. 142). The Court reset the jury trial for September 20, 2024. (Dkt. 157). The Court finally reset the jury trial for September 23, 2024. (Dkt. 234).

On March 7, 2024, Judge Lane granted Microsoft's motion to exclude the expert opinions of Exafer's damages expert, Mr. Blok, (Order, Dkt. 165), and this Court affirmed that order, (Dkt. 180). Exafer then moved to re-open fact and expert discovery and reset the trial date. (Dkt. 192). The Court denied Exafer's motion after finding that Exafer failed to show good cause for re-opening discovery. (Dkt. 212). The following motions are now pending before the Court: (1) Exafer's motion to exclude certain expert testimony of Dr. James Olivier and Mr. Christopher Martinez, (Dkt. 193); (2) Exafer's motion for partial summary judgment, (Dkt. 194); (3) Microsoft's motion for summary

5

judgment based on absence of remedy, (Dkt. 195); (4) Microsoft's motion to exclude expert opinions of Dr. Congdon, (Dkt. 196); and (5) Microsoft's motion for summary judgment based on absence of liability, (Dkt. 197). Because the Court will grant Microsoft's motion for summary judgment based on absence of remedy, the Court does not reach the other motions.

## II. LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers*

*Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### III. DISCUSSION

### A. Patent Damages

Under 35 U.S.C. § 284, the Court must award a successful claimant "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer." However, "[t]he statute does not require an award of damages if none are proven that adequately tie a dollar amount to the infringing acts." *TecSec, Inc. v. Adobe Inc.*, 978 F.3d 1278, 1291 (Fed. Cir. 2020). Although the Federal Circuit stated that it is "unlikely" for zero to be the reasonable royalty, "in a case completely lacking evidence on which to base a damages award, the record may well support a zero royalty award." *Id.* (citing *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1328 n.7 (Fed. Cir. 2014), *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015)). Further, "a patent owner may waive its right to a damages award when it deliberately abandons valid theories of recovery in a singular pursuit of an ultimately invalid damages theory." *Id.* (citing *Promega Corp. v. Life Techs. Corp.*, 875 F.3d 651, 666 (Fed. Cir. 2017)).

### B. Exafer's Damages Theory

In its amended complaint, Exafer seeks damages "under 35 U.S.C. § 284, or otherwise permitted by law." (Am. Compl., Dkt. 38, at 52). Exafer does not request any injunctive relief. In its initial disclosures to Microsoft pursuant to Federal Rule of Civil Procedure 26,[1] Exafer stated that it

---

[1] Federal Rule of Civil Procedure 26(a)(1)(A)(iii) requires a party to provide to the other parties, without awaiting a discovery request: "a computation of each category of damages claimed by the disclosing party—

7

"seeks damages resulting for the sales of the Accused Product." It further stated that "Microsoft is in possession . . . of all financial data related to the accused products, so [Exafer] is currently unable to provide a computation of damages. Exafer will amend its response once provided with the appropriate data." (Exafer's Rule 26 Disclosures, Dkt. 195-2, at 8). Under Rule 26(e)(1)(A), Exafer was required to supplement its damages disclosure "in a timely manner if the party learns that in some material respect the disclosure or response is . . . incomplete." Microsoft claims that Exafer never supplemented its initial disclosures to provide the required computation of damages or identification of supporting documents. (Mot., Dkt. 195, at 7–8).

      Microsoft further alleges that Microsoft "specifically requested Exafer's damages theories and evidence" during fact discovery. (*Id.* at 8). In an interrogatory, Microsoft asked Exafer to describe in detail its contentions regarding any claim for damages and to identify relevant documents, evidence, and potential witnesses. (Exafer's Resp. to Microsoft's Interrogatories, Dkt. 195-2, at 3). Exafer objected to the interrogatory as "vague, ambiguous, and overlybroad" [sic] and also asserted attorney-client privilege. (*Id.* at 4). Exafer stated that it would "detail its damages theory in the liability and damages expert reports it intends to serve in this case." (*Id.*). Microsoft also sought corporate deposition testimony on the facts "concerning any contention that Exafer is entitled to a reasonable royalty in this case, including the factual bases applicable to each of the *Georgia Pacific* factors" and "any valuation of the Patents-in-Suit." (Mot., Dkt. 195, at 8; Exafer's Resp. to Microsoft's Am. Notice of Depo., Dkt. 195-2, at 12). In the same notice of deposition, Microsoft sought testimony on Exafer's valuation of the Patents-in-Suit. (*Id.* at 14). During his deposition on September 3, 2021, Exafer's designated witness, Amir Harel, stated that he could not

---

who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered."

talk about Exafer's damages theory because it was privileged communication. (Harel Depo., Dkt. 195-2, at 21–22). He did state that there were "many, many ways to model" damages and that he believed Microsoft was "profiting from this technology big, big time." (*Id.* at 22). Finally, Harel confirmed that Exafer had not performed a valuation of the Patents-in-Suit. (*Id.* at 25). According to Microsoft, Exafer never supplemented its response to Microsoft's interrogatory concerning damages nor did it designate another corporate witness to testify on Exafer's alleged damages.

During expert discovery, Exafer served reports by its technical expert, Dr. Paul Congdon, and its damages expert, Mr. Justin Blok. (Mot., Dkt. 195, at 9). In his report, Mr. Blok calculated an ongoing per-hour running royalty totaling ▮▮▮▮▮▮▮▮ through the end of 2020, which he estimated based on virtual machine ("VM") revenues. (Order, Dkt. 165, at 4). Exafer also served two supplemental reports from Dr. Congdon and Mr. Blok. (*See* Order, Dkt. 142). On March 7, 2024, a United States Magistrate Judge granted Microsoft's motion to exclude the expert opinions of Mr. Blok because he impermissibly based his royalty base on a feature that Exafer had not accused of infringement. (Order, Dkt. 165). This Court affirmed the magistrate judge and overruled Exafer's objections. (Order, Dkt. 180). After the Court excluded Mr. Blok's opinions, Exafer moved to re-open fact and expert discovery so that it could "supplement the record to accommodate an alternative damages theory to value the benefit that Microsoft obtained by using Exafer's invention." (Dkt. 192, at 5). The Court denied Exafer's motion on the basis that Exafer failed to show that there was good cause for re-opening discovery. (Order, Dkt. 212).

### C. Analysis

Given that this is a motion for summary judgment, the Court must first determine whether Microsoft, the moving party, has made an initial showing that there is no evidence to support Exafer's damages claim. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 587. Based on Exafer's damages expert being struck and its failure to disclose any other damages evidence or theories to Microsoft

9

during discovery, the Court finds that Microsoft has made the initial showing that there is no evidence to support that Exafer's reasonable royalty, upon a finding of infringement, should be more than zero. Thus, the issue before the Court is whether Exafer has raised a genuine issue of fact as to whether its reasonable royalty under 35 U.S.C. § 284—assuming that Exafer prevailed on its infringement claims—is greater than zero. *See Sanchez Oil & Gas Corp. v. Crescent Drilling & Prod., Inc.*, 7 F.4th 301, 309 (5th Cir. 2021) ("If the moving party makes this initial showing, the nonmovant must come forward with specific facts showing a genuine factual issue for trial.") (internal citations omitted); *Info-Hold, Inc. v. Muzak LLC*, 783 F.3d 1365, 1371–72 (Fed. Cir. 2015) ("[I]f there exists a factual issue regarding whether the patentee is due any non-zero royalty, the district court must deny summary judgment.").

In its response to Microsoft's motion for summary judgment based on absence of remedy, Exafer claims that there is evidence in the record that supports a non-zero royalty based on Microsoft's alleged cost savings. (Resp., Dkt. 207, at 8). Exafer contends that this evidence comes from: (1) Dr. Congdon's expert reports and testimony; (2) Dr. Maltz's record testimony; (3) Mr. Martinez's expert reports and testimony; and (4) Dr. Olivier's expert reports and testimony.

### 1. Dr. Congdon's expert reports and testimony

Dr. Congdon is Exafer's designated technical expert. Exafer asserts that "Dr. Congdon's expert opinions regarding a cost-savings-based damages award" have not been excluded by the Court. Indeed, a United States Magistrate Judge denied Microsoft's motion to exclude Dr. Congdon's damages opinions in paragraphs 108–26 of his original report and paragraphs 10–33 of his supplemental report because "he does not opine that [virtual machines] should serve as the royalty base" like Mr. Blok did. (Dkt. 165, at 6). Exafer points specifically to a number of times in the record where Dr. Congdon has opined that "the benefits from VFP FastPath and SmartNIC result in CPU cycle savings." (Resp., Dkt. 207, at 9). Exafer states that Dr. Congdon's opinions

about the CPU cycle savings are "rooted in Microsoft's own internal documents that indicate VFP provided a '█████' improvement in VFP cycles" and that indicate SmartNIC provided "an improvement in CPU core performance of '████.'" (*Id.* at 9 (citing VFP v2, Dkt. 207-2, at 513)). However, this is not evidence of a non-zero reasonable royalty; rather, it is evidence of a technical benefit as described by Exafer's technical expert. Exafer also points out that Dr. Congdon's supplemental report "discusses the many statements Dr. Maltz made about cost-savings associated with Microsoft's use of VFP FastPath and SmartNIC." (*Id.* at 9–10). However, these statements, too, focus only on a technical benefit from VFP FastPath and SmartNIC without making any connection to a financial benefit such as cost savings. (*See, e.g.*, Congdon Supp. Report, Dkt. 207-2, at 462 ("Microsoft used VFP FastPath in order to handle ████████ more efficiently. This, in turn, allowed Microsoft to free up CPU cycles (and cores), which is a significant benefit."); *id.* at 473 ("[T]here are also operational savings associated with the deployment of a SmartNIC to offload network operations . . . Network functions implemented by the Azure SmartNIC, such as NATv4, were shown to improve the energy efficiency on the server by ████.")).

The only instance that Exafer identifies where Dr. Congdon opines on cost savings, not technical benefits, is a paragraph from his initial expert report which states:

> Without the benefits of the inventions claimed in the Patents-in-Suit, as implemented in Azure, through the VFP and SmartNIC, Microsoft would have had to procure and operate more ████████████ , procure additional ████████████████████████████████████████, and reduce margins on ████████████ in order to remain competitive.

(Resp., Dkt. 207, at 9 (citing Congdon Report, Dkt. 207-2, at 55)).

Without more, Dr. Congdon's opinion that Microsoft saved costs by not procuring and operating ████████████████ is insufficient to raise a fact issue as to a zero reasonable royalty rate. Exafer does not point to anything in Dr. Congdon's reports or testimony that a court or a jury

11

could use to determine how much money Microsoft saved by implementing Azure or if Microsoft even did cut down on costs by implementing Azure. Further, Dr. Congdon specifically stated that "it's not [his] responsibility to come up with the specific damages number" and that he was "providing the background information to Mr. Block [sic] so that he could create a model for . . . demonstrating the benefits." (Congdon Depo., Dkt. 220-2, at 4). He also stated that his job "was to show infringement, not to do the financial or damages team's job . . . . That's not [his] area of expertise." (Congdon Depo., Dkt. 220-2, at 11). Dr. Congdon has admitted that he is not qualified to opine on a proper damages theory in this case nor was that his intent in his expert reports and testimony. Therefore, the Court finds that Dr. Congdon's testimony and expert reports do not raise a genuine issue of material fact as to a reasonable royalty of zero. *See TecSec, Inc. v. Adobe Inc.*, No. 1:10-CV-115, 2019 WL 13119397, at *4 (E.D. Va. June 18, 2019), *aff'd in part, rev'd in part and remanded*, 978 F.3d 1278 (Fed. Cir. 2020) (disregarding an expert witness's opinion on a reasonable damages award after the expert stated that he "would have to defer to the damages experts" and that he "does not know how damages are calculated.").

### 2. Dr. Maltz's testimony

Dr. Maltz is Microsoft's Technical Fellow and Corporate Vice President for Azure Core. Exafer claims that his "testimony, along with contemporaneous documents Microsoft produced in this case, provide ample factual bases for both Exafer's and Microsoft's own expert opinions that VFP FastPath and SmartNIC *are indeed* valuable to Microsoft." (Resp., Dkt. 207, at 11 (emphasis in original)). Exafer points to Dr. Maltz's testimony that "[t]he advantage of using SmartNIC is that it takes fewer cycles per byte to process████████████████" and that "it takes fewer CPU cycles per byte ████████████████." (*Id.* at 11–12 (citing Maltz Depo., Dkt. 207-2, at 523)). However, as with Dr. Congdon's reports and testimony, the evidence that Exafer points to is not evidence of cost savings but rather evidence of the technical

12

benefit of the Accused Features. Exafer itself concedes that "Dr. Maltz explained how expensive it is—*in terms of CPU cycles*—███████████████████████████████████████████." (*Id.* at 12 (citing Maltz Depo., Dkt. 207-2, at 524) (emphasis added)).

The only statement Exafer points to in Dr. Maltz's testimony that touches on financial benefit rather than technical benefit is when Dr. Maltz testified that "using ████████ is cheaper than ███████████████████████████████, to achieve the same performance." (*Id.* at 12 (citing Maltz Depo., Dkt. 207-2, at 526–27)). However, as with Dr. Congdon's testimony, without more, Exafer fails to raise a fact issue as to whether it is entitled to a zero reasonable royalty. The Federal Circuit has held that "[i]n patent cases, the burden of proving damages falls on the patentee, and the patentee must show his damages by evidence. Damages must not be left to conjecture by the jury. They must be proved, and not guessed at." *Promega*, 875 F.3d at 660 (internal citations omitted) (cleaned up). Certainly, Exafer has not identified anything in Dr. Maltz's testimony that would save a jury from pure speculation as to what Microsoft's alleged cost savings are. As Exafer has not pointed to any evidence that would help a jury quantify the technical benefits of the Accused Features as a dollar amount in cost savings, a damages award of more than zero based on Dr. Maltz's testimony would be "ultimately speculative and insufficiently grounded in evidence." *TecSec, Inc.*, 978 F.3d at 1292 (upholding district court's conclusion that the reasonable royalty after a finding of patent infringement was zero); *see also Trutek Corp. v. BlueWillow Biologics, Inc.*, No. 21-10312, 2023 WL 6130532, at *17 (E.D. Mich. Sept. 19, 2023), *reconsideration denied*, No. 21-10312, 2024 WL 180851 (E.D. Mich. Jan. 17, 2024) (granting summary judgment of no damages when the damages evidence did not "support a nonspeculative damages award").

### 3. Mr. Martinez's expert reports and testimony

Microsoft designated Mr. Martinez as a damages expert to rebut the expert opinions of Mr. Blok, Exafer's excluded damages expert. Exafer argues that Mr. Martinez "explained in his

13

depositions that *one way* to determine the value of the benefit Microsoft received from VFP FastPath and SmartNIC would be to consider an appropriate reasonable royalty based on cost savings." (Resp., Dkt. 207, at 12). However, because the Court has excluded Mr. Blok's opinions, Microsoft does not plan to call Mr. Martinez. (Reply, Dkt. 220, at 9). Therefore, Mr. Martinez's reports and testimony are impermissible hearsay under Federal Rule of Evidence 801. "There are circumstances where the testimony of an expert witness can serve as an adverse admission against the presenting party." *Fox v. Taylor Diving & Salvage Co.*, 694 F.2d 1349, 1355 (5th Cir. 1983). However, "[s]uch circumstances must be narrowly construed." *Id.* "[A]n expert retained solely to be an independent expert witness at trial does not fall within this exclusion to the hearsay definition." *Fractus, S.A. v. AT&T Mobility LLC*, No. 2:18-CV-00135-JRG, 2019 WL 4805910, *3 (E.D. Tex. Sept. 30, 2019).

Exafer contends that the Federal Circuit allowed a district court to consider a defendant's expert deposition although the defendant did not call that witness in *Info-Hold*, 783 F.3d at 1371. But in *Info-Hold*, the Federal Circuit merely noted that the defendant had "not specifically objected to the admissibility of [its expert's] deposition testimony" and "le[ft] to the district court to decide whether the deposition may be considered." *Id.* at 1372. Further, Exafer argued that the district court in *Elbit Sys. Land & C4I Ltd. v. Hughes Network Sys., LLC*, held that a defendant's damages expert report is part of the record because Fifth Circuit law holds an opponent's expert's statements admissible under Fed. R. Evid. 801(d)(2)(C) as a party admission. No. 215CV00037RWSRSP, 2017 WL 2651618, at *4 (E.D. Tex. June 20, 2017), *report and recommendation adopted*, No. 2:15-CV-00037-RWS, 2017 WL 4693971 (E.D. Tex. July 31, 2017); (Resp., Dkt. 207, at 13). However, the district court in *Elbit* did not reach the hearsay issue. 2017 WL 2651618, at *5. Although there is *dicta* in *Elbit* citing "Fifth Circuit law finding an opponent's expert's statement admissible under Rule 801(d)(2)(c)," *id.* at *4, the cited caselaw does not apply to witnesses like Mr. Martinez who are retained to offer expert opinions under Rule 26(a)(2). *Elbit* cites the Fifth Circuit's decision in *Collins v. Wayne Corp.*,

14

which involved an investigative expert hired "two days after the accident" to "report his conclusions" directly to the party who hired him. 621 F.2d 777, 780–82 (5th Cir. 1980). Because the investigator was an agent of the defendant, his investigative report was not hearsay but a party admission. *See id.* However, *Collins* does not apply to litigation experts, who are presumed to testify "impartially in the sphere of their expertise" and "cannot be deemed an agent" of the party that hired them. *Fractus,* 2019 WL 4805910, at *3 (quotations omitted). *Collins* is "limited to circumstances in which the expert was retained or employed for some purpose other than solely offering an expert opinion in the context of litigation"—e.g., for "internal investigations." *Id.* at *2. In contrast, "an expert retained solely to be an independent expert witness at trial does not fall within this exclusion to the hearsay definition." *Id.* at *3; *accord, e.g., Kirk v. Raymark Indus., Inc.*, 61 F.3d 147, 164 (3d Cir. 1995). Thus, Mr. Martinez's reports and testimony are inadmissible hearsay that Exafer cannot use to raise a fact issue as to the reasonable royalty. *See Lee v. Offshore Logistical & Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017), *as revised* (July 5, 2017) ("substance or content of the evidence submitted to support or dispute a fact on summary judgment must be . . . admissible at trial") (internal citations omitted).

### 4. Dr. Olivier's expert reports and testimony

Dr. Olivier is Microsoft's designated infringement expert. Exafer asserts that Dr. Olivier "acknowledged Microsoft's own evidence indicating that core cycles are reduced by implementation of VFP FastPath and SmartNIC, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." (Resp., Dkt. 207, at 11). Exafer points to several of Dr. Olivier's statements in the record. (*Id.* (citing Olivier Depo, Dkt. 207-2, 645–46 ("Q. And using SmartNIC freed up CPU cores on the host ▮▮▮▮▮▮▮▮▮, correct? A. That's what this document says."); *id.* at 646 ("And these graphs show that by using SmartNIC, Microsoft was able to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, correct? A. Yeah, based on these samples that they talked about up here, that's what this document says."); *id.* at 647

15

("Q. Okay. And Microsoft looks for ways to get more CPUs freed up so that it can ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, correct? A. I would imagine they would like to, yes."))). Once again, Exafer identifies evidence that supports the existence of a technical benefit to Microsoft from use of the Accused Features but fails to identify any evidence that links the technical benefit to a monetary amount of cost savings. Damages based on Dr. Olivier's statements would be purely speculative given that there is no evidence of Microsoft's alleged cost savings. Therefore, Dr. Olivier's statements do not raise a fact issue on a zero reasonable royalty.

### 5. Microsoft's documents

Throughout its brief, Exafer refers to "Microsoft's internal documents," "technical and financial documents," "contemporaneous documents," "Microsoft's documents," and "documents that Microsoft produced." (Resp., Dkt. 207, at 4, 6, 12, 19). However, the only document that Exafer identified and attached to its response was a slide presentation that projects a "▮▮▮▮ improvement in VFP CPU." (*Id.* at 4 n.5 (citing VFP v2, Dkt. 207-2, at 513)). As Exafer has failed to identify any of Microsoft's documents that may support a non-speculative, non-zero reasonable royalty, the Court does not find that these unspecified documents raise a fact issue as to Exafer's damages award. *See Adams*, 465 F.3d at 164 (5th Cir. 2006) (Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment).

### IV. CONCLUSION

In its response to Microsoft's motion for summary judgment, Exafer emphasizes that the Federal Circuit has held that a "patentee's failure to show that its royalty estimate is correct is insufficient grounds for awarding a royalty of zero. By extension, the exclusion of the patentee's damages evidence is not sufficient to justify granting summary judgment." (Resp., Dkt. 207, at 6–7 (citing *Info-Hold*, 783 F.3d at 1371–72)). However, the Court is not granting summary judgment

16

based on Exafer's failure to provide a *correct* royalty estimate or on the exclusion of Mr. Blok. Rather the Court is granting summary judgment based on the lack of evidence in the record that a jury could use to arrive at a non-speculative reasonable royalty based on Microsoft's alleged cost savings.

Where, as here, "a plaintiff fails to establish any basis for an award of relief, the defendant is entitled to a judgment dismissing the case with prejudice[.]" *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 923 (N.D. Ill. 2012), *aff'd in part, rev'd in part on other grounds and remanded*, 757 F.3d 1286 (Fed. Cir. 2014); *see also Info-Hold*, 783 F.3d at 1372 (reversing district court's grant of summary judgment based on absence of damages in a patent case after determining that there was "record evidence to demonstrate the existence of a genuine issue of material fact" as to a reasonable royalty). Accordingly, the Court will grant Microsoft's motion for summary judgment based on absence of damages and dismiss Exafer's infringement claims with prejudice.

Microsoft has represented that it plans to move to dismiss its counterclaims for declaratory judgments against Exafer in the case that the Court grants summary judgment based on absence of damages. (Reply, Dkt. 220, at 14). Therefore, in the interest of judicial efficiency, the Court will not address any of the other pending summary judgment or Daubert motions at this time.

For the reasons stated above, **IT IS ORDERED** that Microsoft's Motion for Summary Judgment Based on Absence of Remedy, (Dkt. 195), is **GRANTED**. Exafer's claims against Microsoft are **DISMISSED WITH PREJUDICE**.

The Court files this order under seal because it contains references to material that may be subject to the parties' protective order in this case. The Court intends to publish a public version of this Order. Accordingly, **IT IS FURTHER ORDERED** that the parties, on or before **August 29, 2024**, shall each (1) file specific and reasonable proposed redactions of this Order; and (2) provide written justifications as to each proposed redaction.

17

**IT IS FURTHER ORDERED** that the Final Pretrial Conference set for September 4, 2024, and the Trial set for September 23, 2024, are **VACATED**.

**IT IS FINALLY ORDERED** that Microsoft shall move to dismiss its counterclaims or file a status report on or before **August 29, 2024**.

**SIGNED** on August 15, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE